UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SGT. HIGGENS, CPL. HARTNETT,<br>C/O FLEMING, and C/O DAVIDSON,<br><br>　　　　　　Defendants. | Case No. 1:13-cv-00380-REB<br><br>**INITIAL REVIEW ORDER** |

　　　　The Clerk of Court conditionally filed Plaintiff Jody Carr's Complaint as a result of his status as an inmate and his in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**REVIEW OF COMPLAINT**

**1.　　Standard of Law for Summary Dismissal**

　　　　The Court is required to review complaints filed in forma pauperis, or those filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim,

**INITIAL REVIEW ORDER - 1**

that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own

**INITIAL REVIEW ORDER - 2**

misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

2. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho Maximum Security Institution. Plaintiff claims that for several days in November 2011, Defendants Fleming, Hartnett, and Davidson fed Plaintiff human feces infected with bacteria known as clostridium difficile, or C-diff. (Compl., Dkt. 3, at 6.) According to Plaintiff, he had been eating his food for two days when an unidentified correctional officer told him, "'Carr don't eat your trays, their [sic] putting shit in it.' Plaintiff responded, 'What kind of shit?' Officer replied 'Shit-shit!'" (*Id*. at 16, 29.) The officer then allegedly told Plaintiff that he had overheard Fleming, Hartnett, and Davidson describing "how C/O Fleming went out to a Porta-Potty in the . . . parking lot at a construction site and put human poop into a styra-foam cup, brought it

**INITIAL REVIEW ORDER - 3**

into the prison, put it in Plaintiff's food on his IDOC food tray, mixed it in and fed it to Plaintiff (Defendants were laughing and joking about it)." (*Id*. at 29.) Plaintiff states that Defendant Fleming admitted putting feces in Plaintiff's food because he called her a "bitch." (Aff. of Jody Carr, Dkt. 3-1, at 8.)

Plaintiff states that he began to have diarrhea soon afterwards and was diagnosed with an antibiotic-resistant strain of C-diff. Plaintiff believes that the allegedly contaminated food carried the bacteria. (*Id*.) It appears that prior to this alleged incident, Plaintiff had named Hartnett and Davidson as defendants in a civil rights lawsuit. (Compl., Dkt. 3, at 28.)

Plaintiff claims that he was unable to get medical treatment for over two months for his C-diff, despite his severe diarrhea and weight loss, but he does not allege that any named Defendant had anything to do with Plaintiff's medical care. (*Id*. at 30.)

Plaintiff also alleges that Defendant Higgens placed Plaintiff in segregation for a year without notice or a hearing. (*Id*. at 7.) Prison officials justified this segregation as a quarantine due to Plaintiff's C-diff. (*Id*. at 25.) Plaintiff also claims that he "forced" Defendant Higgens to "accept" concern forms and grievance forms and that Plaintiff was immediately transferred to a different prison. (*Id*. at 17.) Plaintiff states that such transfers occurred repeatedly. (*Id*. at 15.) He also claims that he was unable to have his grievances heard by prison officials because he would file a grievance, get transferred, and receive the grievance back with the response, "You are no longer in this facility." (*Id*. at 12.)

**INITIAL REVIEW ORDER - 4**

Plaintiff asserts that Defendants Fleming, Hartnett, and Davidson "attempted to keep Plaintiff in isolation cells at any other facilities except for ICI-O, so that Plaintiff would not be able to gather evidence and affidavits for civil litigation and/or criminal prosecutions and to punish 'retaliate' against the Plaintiff as to torture him until he dropped his lawsuits and grievances." (*Id*. at 23-24.) These Defendants also allegedly stole some of Plaintiff's evidence for another of his lawsuits. (*Id.* at 27.)

Plaintiff also claims that Defendant Fleming was caught by another correctional officer "kicking, punching, and spitting on Plaintiff's cell door and cell door window. (*Id*. at 28.) He states that Fleming was reprimanded "and became very angry towards Plaintiff." (*Id*.)

3.    **Eight Amendment Claims**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). He must also show that Defendants were deliberately indifferent to his needs. *Id.* at 835. To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

**INITIAL REVIEW ORDER - 5**

Although "the Constitution does not mandate comfortable prisons," conditions of confinement can constitute cruel and unusual punishment when they "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). The Eighth Amendment requires that prisoners receive minimally adequate medical care, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

A prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Id.*

Plaintiff has sufficiently alleged that Defendants Fleming, Hartnett, and Davidson violated the Eighth Amendment by placing human feces in his food, which potentially infected Plaintiff with C-diff. He has not, however, stated an Eighth Amendment excessive force claim against Defendant Fleming; although she may have attacked Plaintiff's cell door and exhibited unprofessional behavior, Plaintiff does not allege that she attempted to injure him in any way.

Finally, Plaintiff has not stated a viable claim for denial of inadequate medical care

**INITIAL REVIEW ORDER - 6**

under the Eighth Amendment because he does not connect any of his medical treatment to a particular Defendant.

4.      **Due Process Claims**

The Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without due process of law. When an inmate challenges his confinement in administrative or disciplinary segregation, he must show that he has a liberty interest before he can bring a due process claim. *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). Because liberty interests are "generally limited to freedom from restraint," a prisoner asserting a due process claim must show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The *Sandin* Court relied on three factors in determining that the plaintiff in that case possessed no liberty interest in avoiding thirty days of disciplinary segregation: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation; (2) how the conditions of the plaintiff's confinement compared to conditions in the general population to determine whether the plaintiff suffered a "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Id*. at 486-87.

If an inmate shows that he has a liberty interest in not being confined in segregation, then the following analysis applies. Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Davis v. Scherer*, 468 U.S.

**INITIAL REVIEW ORDER - 7**

183, 202 (1984). The sufficiency of procedures is gauged by reviewing three factors: (1) the individual interest at stake; (2) the value of the procedural requirements, including the risk of an erroneous deprivation; and (3) the governmental interest involved. *Mathews v. Eldridge*, 424 U.S. 319, 341-48 (1976).

Plaintiff has sufficiently alleged that he had a liberty interest in avoiding being held in administrative segregation for an entire year without notice or a hearing, and that Defendant Higgens deprived Plaintiff of the process he was due. He may proceed on this claim against Defendant Higgens.

5.  **Retaliation Claims**

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). Although the timing of an official's action can be circumstantial evidence of retaliation, there must generally be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d

**INITIAL REVIEW ORDER - 8**

802, 808 (9th Cir. 1995).

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). But not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

**INITIAL REVIEW ORDER - 9**

Plaintiff may proceed on his claims that Defendant Higgens transferred Plaintiff between prisons multiple times in retaliation for filing concern forms, grievances, or lawsuits. Plaintiff may also go forward on his retaliation claims that Defendants Fleming, Hartnett, and Davidson contaminated his food with feces with a retaliatory motive; his allegation that they had been named as defendants in another of Plaintiff's recent civil actions is sufficient at this early stage of proceedings to avoid summary dismissal.

**6.    Access to Courts Claims**

Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977). In order to demonstrate that he has a viable access to courts claim, Plaintiff must show that he suffered an actual injury as a result of Defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury may be manifest if the alleged denial of access "hindered [a plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [Defendants' actions] that he was unable even to file a complaint." *Id.* at 351. The right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *Id*. at 354. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355.

**INITIAL REVIEW ORDER - 10**

Plaintiff's allegations that Defendants Fleming, Hartnett, and Davidson "attempted to keep Plaintiff in isolation cells at any other facilities except for ICI-O, so that Plaintiff would not be able to gather evidence and affidavits for civil litigation and/or criminal prosecutions," and that these Defendants stole evidence (Compl. at 23-24, 27), do not state a colorable access to courts claim. Plaintiff has not alleged that he suffered an actual injury to his right of access to the courts and therefore may not proceed on these claims.

## PLAINTIFF'S REQUEST FOR EMERGENCY INJUNCTION

Plaintiff has also filed a Request for Emergency Leave of Court to File an Emergency Request for an Emergency Injunctive Order (Dkt. 8) and an Emergency Request for an Emergency Injunctive Order (Dkt. 9). Plaintiff alleges that after he attempted to communicate with Defendants to discuss a potential settlement, he was issued a Disciplinary Offense Report (DOR) for "Unauthorized Communication Level 2." (Dkt. 8 at 2.) Plaintiff states that Sergeant Mechtel—not a defendant in this case—issued the DOR and, after Plaintiff complained, issued him a second DOR for harassment, "upping the severity from a 'Class-C' to a 'Class-B.'" (*Id*.) Plaintiff claims he "has Emergency need to be housed where he can gather evidence" for his lawsuits. (Dkt. 9 at 1-2.) Plaintiff seeks to be transferred to "the minimum security prison known as Giveans Hall." (*Id*. at 2.) He fears further retaliation if he remains at IMSI.

Plaintiff also contends that he needs to be in protective custody. He claims that a corrupt detective stole Plaintiff's car and half a million dollars in jewelry and that the

INITIAL REVIEW ORDER - 11

detective hired a street gang to kill Plaintiff. (*Id*. at 6.) According to Plaintiff, he was "finally stabbed 3 times in his face and 1 time in the back of his head on or about September 20, 2004." (*Id*.) He claims that he has been subjected to "unlivable and torturous" prison conditions and was the victim of a trumped-up escape charge. (*Id*. at 7.)

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. A Rule 65 preliminary injunction may be granted if the moving party demonstrates the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits; (3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Because a preliminary injunction is an extraordinary remedy, injunctive relief must be denied "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks omitted). A court "is not obligated to hold a hearing [on a motion for a preliminary injunction] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1176 (3rd Cir. 1990).

The instant action concerns actions taken by Defendants Higgens, Fleming, Hartnett, and Davidson prior to the filing of the Complaint. Because Plaintiff has not supplemented his claims against the existing Defendants for actions occurring after the

**INITIAL REVIEW ORDER - 12**

...

filing of the Complaint, such as additional retaliation, the claims in the request for preliminary injunction are arguably outside the scope of the claims in the Complaint. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (stating that a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"). In addition, the employee who carried out the alleged retaliation as described in Plaintiff's Emergency Request is not a defendant in this case, and Plaintiff makes no allegations that any named defendant retaliated against him after he filed his Complaint. Plaintiff's allegations of a corrupt detective who stole from him and tried to have him killed are irrelevant to the claims in the Complaint and are outside the statute of limitations for a civil rights action. Further, Plaintiff makes no showing that irreparable harm is likely to occur if relief is not granted, which is a required element to obtain a preliminary injunction.

      Finally, as cautioned by the Supreme Court, federal courts must approach with caution any interference with the day-to-day operations of the prisons, especially those things related to security, a task which is best left to prison officials who have particular experience in dealing with prisons and prisoners. *See Turner v. Safley*, 482 U.S. 78, 91-92 (1987). Because placement of inmates in particular facilities is often a matter of security and Plaintiff has asserted only speculative grounds to support his claim of future retaliation, the Court declines to enter an Order requiring that Plaintiff be transferred.

**INITIAL REVIEW ORDER - 13**

CONCLUSION

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that some are colorable, meaning that the claims will not be summarily dismissed at this stage. Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims. It is Plaintiff's burden to thoroughly set forth the legal and factual basis for each claim.

ORDER

IT IS ORDERED:

1. Plaintiff's Emergency Request for an Emergency Injunctive Order (Dkt. 9) is DENIED.

2. Plaintiff may proceed on the following claims against the following Defendants:

   a. Eighth Amendment claims against Defendants Fleming, Hartnett, and Davidson for allegedly contaminating Plaintiff's food;

   b. Fourteenth Amendment due process claims against Defendant Higgens for allegedly placing Plaintiff in administrative segregation without notice or a hearing;

   c. Retaliation claims against Defendant Higgens for allegedly transferring Plaintiff to different prisons; and

**INITIAL REVIEW ORDER - 14**

d. Retaliation claims against Defendants Fleming, Hartnett, and Davidson for allegedly contaminating Plaintiff's food.

Plaintiff may not proceed on any other claims at this time.

3. Defendants shall be allowed to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court shall forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706**, on behalf of Defendants.

4. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it shall file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

5. If Plaintiff receives a notice from Defendants indicating that service will

not be waived for an entity or certain individuals, Plaintiff shall—unless otherwise ordered—have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice.

6. The parties shall not engage in any discovery until an answer has been filed. Within 30 days after an answer has been filed, the parties shall provide each other with the following voluntary disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12, disclosures and discovery shall be automatically stayed with the exception that Defendants shall submit with any motion to dismiss for failure to exhaust administrative remedies a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms

submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim.

7. Each party shall ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

8. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United

**INITIAL REVIEW ORDER - 17**

States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

9. Discovery shall not be filed with the Clerk of Court, but shall be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements between themselves.

10. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order will be stricken or returned to the moving party unfiled.

11. Plaintiff shall notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: **December 5, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**INITIAL REVIEW ORDER - 18**